Opinion issued April 15, 2010

                                                                        

 

 

 

 

 

 



 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00300-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



DARYL WAYNE ALEXANDER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 174th District Court

Harris County, Texas

Trial Court Cause No. 1189119

 

 



MEMORANDUM OPINION

          A
jury convicted Daryl Wayne Alexander of the state jail felony of possession of
a controlled substance, cocaine, weighing less than one gram.  See
Tex. Health & Safety Code Ann.
§§ 481.102(3)(D), 481.115(a)–(b) (Vernon Supp.
2009).  The trial court assessed
punishment at two years’ confinement pursuant to Alexander’s agreement with the
State.  On appeal, Alexander contends
that (1) the State failed to present legally and factually sufficient evidence
that Alexander possessed the cocaine; (2) the trial court erred in denying
Alexander’s motion to suppress evidence because the cocaine was not in plain
view and the arresting officers unreasonably believed that Alexander possessed
cocaine at the time of arrest; and (3) the trial court erred in denying
Alexander’s proposed article 38.23 jury instruction.  We conclude that (1) sufficient evidence
supports the jury’s verdict, (2) the trial court did not err in denying the
motion to suppress, and (3) Alexander waived his complaint about the jury
charge.  We therefore affirm.

Background

On October 25, 2008, Houston Police
Department Officers McNichols, Williams, and Sampson patrolled downtown Houston
on bicycle.  Around eight o’clock in the
evening, Officer McNichols saw Alexander’s car parked under the Pierce Elevated
section of Interstate 45.  McNichols
noticed that the passenger side door was slightly open, the driver’s side
window was rolled down about six inches, and the two passengers, Alexander and Jack
Hill, had angled their heads toward the middle of the car.  Because this area is known for its drug and
prostitution problem, McNichols decided to investigate further.

McNichols testified that it was not
yet dark outside when he noticed the vehicle, and the remaining natural light
combined with the artificial lighting under the bridge of the Pierce Elevated
allowed him to see “very well.”  While still
on his bicycle, he pulled up to Alexander’s car, leaned against the door, and
saw that Alexander, sitting in the passenger’s seat, and Hill, in the driver’s
seat, each held what appeared to be a small rock of crack cocaine.  McNichols then called to Officers Williams
and Sampson, who had ridden several feet ahead while McNichols stopped at
Alexander’s car, and asked them to bring their flashlights.  Officer Sampson used his flashlight and
Officer Williams used the light mounted on his bicycle to look into Alexander’s
car, and all three officers observed Alexander and Hill looking down at the cocaine
rocks in their hands.  At this point,
Alexander and Hill noticed the flashlights and the officers outside the car.  After the officers removed both men from the
vehicle, Hill admitted that the rocks were crack cocaine that he had bought
down the street and he was splitting them with Alexander.  The rocks all field-tested positive for
cocaine.  Criminalist James Miller
testified that he later confirmed that the substance was cocaine, and the rocks
held by Hill and Alexander weighed 0.05 and 0.07 grams, respectively.  Miller also stated that he labeled the bag
containing the smaller quantity with an “A” and the bag containing the larger
quantity, a rock which was broken into two pieces, with a “B.”  The trial court admitted both bags of cocaine
into evidence.

McNichols testified that although he
encountered Alexander and Hill around eight o’clock in the evening, there was
still enough light to see into the vehicle and he asked his fellow officers for
their flashlights only to “get a better view.” 
McNichols also stated that he had “seen crack cocaine before” and thus
suspected that the substance was cocaine, but he could not be positive until
the officers performed a field test.  Officer
Williams testified that, at the time, the only available light was from the
streetlights under the Pierce Elevated.  He
initially stated that was able to see into Alexander’s vehicle without the aid
of a flashlight; however, on cross-examination, he conceded that additional
lights beyond the streetlights were necessary to see inside the car.

After the State rested, Alexander
moved for an instructed verdict on the grounds that the State failed to prove which
of the two bags of cocaine Alexander possessed. 
The trial court allowed the State to recall Officer McNichols, who
testified that he took the cocaine from Hill, placed it in a piece of paper,
and kept that rock separate from the rocks taken from Alexander until Officer
Williams placed the rocks into the two separate bags at the narcotics room.  According to McNichols, the bag Miller
labeled with a “B,” which held 0.07 grams of cocaine, contained the cocaine
taken from Alexander.  McNichols
recognized it because that bag contained two pieces of cocaine and Alexander
held two rocks at the time of his arrest. 
The trial court denied Alexander’s motion for an instructed verdict.

Alexander called Jack Hill to testify
on his behalf.  Hill testified that he
was walking up the street when he saw Alexander’s car parked under the Pierce
Elevated and recognized Alexander sitting inside.  According to Hill, he showed Alexander the
cocaine but never intended to share any of it, and Alexander only took
possession of a rock after they noticed the officers standing outside the
car.  Hill also testified that the
windows of the car were tinted, the driver’s side window was closed, minimal
artificial lighting existed under the Pierce Elevated, and one could see “very,
very little” inside the car without the aid of a flashlight.  On cross-examination, Hill stated that he
could see Alexander sitting inside through the window without a flashlight, but
he “had walked all the way up to the car” to do so.

After both parties rested, Alexander
re-urged his pretrial motion to suppress the cocaine and his motion for an
instructed verdict.  After the trial
court denied these motions, defense counsel then made the following request:  “And we’d ask the Court also to insert in the
charge a 38.23 instruction.”  The trial
court denied this request as well.

Discussion

Sufficiency of the Evidence

          In
his first issue, Alexander contends that the State failed to present legally
and factually sufficient evidence that Alexander possessed the cocaine.  In a legal sufficiency review, we view the
evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Salinas
v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  The fact-finder is the sole judge of the
weight and credibility of the evidence.  Margraves v. State, 34
S.W.3d 912, 919 (Tex. Crim. App. 2000), overruled
on other grounds by Laster v. State, 275 S.W.3d 512 (Tex. Crim. App. 2009).  The fact-finder may choose to believe a
witness even if contradictory evidence is introduced, and may believe some or
all of a witness’s testimony.  See Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
We may not reevaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  We resolve any inconsistencies in the
evidence in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex.
Crim. App. 2000).

          In
a factual sufficiency review, we view all of the evidence in a neutral light
and we will only set aside the verdict if the evidence, though legally
sufficient, is so obviously weak that the verdict is (1) “clearly wrong and
manifestly unjust” or (2) against the great weight and preponderance of the
evidence.  Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006)
(quoting Johnson v. State, 23 S.W.3d
1, 11 (Tex. Crim. App. 2000)).  We cannot
decide that the verdict is “clearly wrong or manifestly unjust” just because,
based on the quantum of evidence presented, we would have voted to acquit had
we been on the jury.  See id. at
417.  To remand on factual insufficiency
grounds, the record must contain an objective basis that the great weight and
preponderance of the evidence contradicts the verdict.  See id.  The jury is in the best position to evaluate
the credibility of the witnesses, and thus we defer to the jury’s
determinations.  Marshall v. State, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006).  In a
factual sufficiency review, we must discuss the evidence that, according to the
appellant, best supports his claim and undermines the verdict.  See Sims
v. State, 99 S.W.3d 600, 601 (Tex. Crim. App.
2003).

          A
person commits the state jail felony of possession of a controlled substance if
he knowingly and intentionally possesses the substance—here, cocaine—in an
amount less than one gram.  Tex. Health & Safety Code Ann.
§ 481.115(a)–(b) (Vernon Supp. 2009). 
The State must prove that the defendant (1) exercised actual care,
custody, control, or management over the substance and (2) knew that the
substance possessed was contraband.  Id. § 481.002(38) (Vernon Supp.
2009); Poindexter v. State, 153
S.W.3d 402, 405 (Tex. Crim. App. 2005); Pena
v. State, 251 S.W.3d 601, 606 (Tex. App.—Houston [1st Dist.] 2007, pet.
ref’d).

A.   
Legal Sufficiency

          Alexander
acknowledges that the State presented evidence which tends to prove intentional
and knowing possession:  Officers
McNichols and Williams both testified that they saw Alexander holding what
appeared to be crack cocaine.  Officer
McNichols testified that the driver’s window was rolled down about six inches,
and he leaned up against Alexander’s car to look inside.  McNichols could see “very well,” even without
the aid of a flashlight, though he did use another officer’s flashlight to “get
a better view” of the interior.  McNichols
also related a conversation the officers had with Hill after they removed him
from the vehicle, during which Hill admitted that the substance was crack
cocaine, and that he “had bought it down the street and . . . was splitting it with
[Alexander].”  Officer Williams also
testified that after McNichols called him back to Alexander’s vehicle, he could
see into the vehicle using both Officer Sampson’s flashlight and his own bicycle
light, and he “observed both of the men inside the vehicle looking down at what
appeared to be [crack cocaine] rocks.”  Williams
clarified that both Hill and Alexander were holding rocks.  All three officers stood outside the vehicle
and observed Hill and Alexander holding the cocaine in their hands prior to
ordering them out of the car.

          Alexander
contends that the State failed to prove which bag of cocaine admitted into
evidence belonged to Alexander, because neither McNichols nor Williams made any
notations on the bags, and although Miller testified that he labeled the bags,
he did not indicate which bag belonged to Alexander.  Miller testified that he labeled State’s
Exhibit 3 with an “A” and Exhibit 2 with a “B.” 
Officer McNichols then testified that Exhibit 2 contained the cocaine Alexander
possessed.  According to McNichols, he
took the cocaine from Hill, which consisted of one solid piece, placed it in a
piece of paper, and kept it separate from the cocaine taken from Alexander,
which consisted of multiple pieces.  McNichols
carried the cocaine he recovered from Hill to the narcotics room and watched
Williams place the cocaine from Hill and the cocaine from Alexander into the
two separate bags.  Exhibit 3 contained
one solid rock, whereas Exhibit 2 contained two pieces of cocaine.  The officers’ testimony sufficiently links
Alexander with the cocaine admitted as Exhibit 2.

          Alexander
further contends that the State presented legally insufficient evidence to
support his conviction because McNichols and Williams gave inconsistent
testimony regarding which side of the vehicle they each approached, which is
important to determining whether they could see inside the passenger side of
the car.  McNichols testified that he
approached the driver’s side of Alexander’s car to look inside.  Williams, however, testified that he was the
one who rode up to the driver’s side, while McNichols went to the passenger’s
side of the car.  Regardless of which
side of the vehicle each officer approached, both McNichols and Williams
repeatedly testified that they approached opposite sides of the car and they both
could see inside the car to view Alexander holding crack cocaine.  When evaluating the legal sufficiency of the
evidence, we resolve all inconsistencies in the evidence in favor of the
verdict.  Curry, 30 S.W.3d at 406.  Here, regardless of their positions, both
officers testified that they viewed Alexander holding cocaine.

Viewing the evidence in the light
most favorable to the verdict, we conclude that a rational jury could have
found beyond a reasonable doubt that Alexander exercised care, custody,
control, or management over the cocaine. 
Thus, we hold that the evidence is legally sufficient to sustain his
conviction.

B.   
Factual Sufficiency

          Alexander
additionally contends that the evidence, when viewed in a neutral light, is so
weak that the verdict is clearly wrong and manifestly unjust.  According to Alexander, the following
evidence undermines the jury’s verdict:  it
was dark outside when the officers approached Alexander’s car; the inside of
the car was not lit and the officers admitted they needed more light than just
the streetlights under the Pierce Elevated to see the interior; Hill testified
that the car’s windows were closed and tinted; Hill further testified that
Alexander only touched the cocaine to give it to the officers when Hill
hesitated; and the State failed to prove which bag of cocaine belonged to
Alexander.  Even when we consider these
facts, the great weight and preponderance of the evidence does not contradict
the verdict, nor is the evidence of possession so weak as to render the verdict
clearly wrong and manifestly unjust.

          Although
the officers acknowledged that it was dark outside when they investigated
Alexander’s vehicle, both stated that they could see into the interior.  McNichols testified that he could see “very
well,” and he could see into the interior of the vehicle without the aid of a
flashlight, though he asked the other officers to bring a flashlight in order
to “get a better view.”  Both McNichols
and Williams testified that the window of the car was rolled down about six
inches, and neither could remember if the windows were tinted.  Prior to calling Officers Williams and
Sampson back to the vehicle, McNichols leaned up against the door to the car,
looked inside, and observed both Alexander and Hill holding cocaine.  According to McNichols, Alexander and Hill
did not notice the officers standing outside the car until after the other
officers flashed their lights into the vehicle. 
McNichols continually observed Alexander holding cocaine from the time
McNichols first looked into the vehicle until the time of Alexander’s arrest.

          Officer
Williams initially testified that he could see into the interior without a
flashlight, however, he later agreed with defense counsel that he “would need
more than just the lights that are under the Pierce Elevated” to see into the
car.  Regardless of whether Williams
needed additional light to see into Alexander’s vehicle, he testified that he
could see both Alexander and Hill holding cocaine.  Hill, testifying on Alexander’s behalf, stated
that the windows were tinted and closed, but admitted that it was possible to
see inside the car without a flashlight—although difficult.  On cross-examination, Hill admitted that he
could see Alexander sitting inside the vehicle before he entered it, though he
had to walk “all the way up to the car” and put his hands on the glass.  Hill further testified that he climbed in
Alexander’s vehicle approximately fifteen to twenty seconds prior to the
officers’ arrival.  While in the car, he
cut the cocaine he had just purchased, however, he was not planning to share
any of it with Alexander.  According to
Hill, Alexander did not hold the cocaine prior to the officers identifying
themselves, but instead Alexander only took the cocaine to give to the officers
after they ordered Hill to give up what he was holding.  Officers McNichols and Williams both
testified that they saw Alexander and Hill holding cocaine prior to their awareness
of the officers’ presence outside the vehicle.

The jury is in the best position to
evaluate the credibility of each witness. 
Marshall, 210
S.W.3d at 625.  Even when
contradictory evidence is introduced, the jury may choose to believe a witness,
and they may choose to believe some or all of a witness’ testimony.  Sharp,
707 S.W.2d 614. 
A reasonable jury could choose to believe the officers’ testimony that
they could see into the vehicle and could see Alexander holding the cocaine
prior to his encounter with the police. 
Viewing all of the evidence in a neutral light, we hold that the
evidence is factually sufficient to support the jury’s verdict.[1]

Legality of the Plain View Seizure

          Alexander
further contends that the trial court erred in denying his motion to suppress
the cocaine because the officers conducted an illegal search of his
vehicle.  We review a trial court’s
ruling on a motion to suppress for abuse of discretion.  Shepherd
v. State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).  We view the evidence in the light most
favorable to the trial court’s ruling.  Wiede v. State, 214 S.W.3d 17, 24 (Tex.
Crim. App. 2007) (quoting State v. Kelly,
204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). 
When ruling on a motion to suppress, the trial court is the “sole and
exclusive trier of fact and judge of the credibility of the witnesses as well
as the weight to be given their testimony. 
The trial judge may choose to believe or disbelieve any or all of a
witness’ testimony.”  Green v. State, 934 S.W.2d 92, 98 (Tex.
Crim. App. 1996).  We defer to a
trial court’s express or implied determination of historical facts, as well as
to its application of law to fact questions if those questions turn on the
evaluation of credibility and demeanor.  See Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). 
We review de novo the trial court’s application of search and seizure
law.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000).  We will
sustain the trial court’s ruling if it is reasonably supported by the record
and correct on any theory of law applicable to the case.  Laney v. State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

          Generally,
a warrantless search “is considered per se unreasonable subject to a few
specifically defined and well established exceptions” and violates the Fourth
Amendment.  McGee v. State, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (citing Minnesota v. Dickerson, 508 U.S. 366,
372, 113 S. Ct. 2130, 2135 (1993)). 
Seizing contraband located in plain view, however, does not violate the
Fourth Amendment because the “seizure of property in plain view involves no
invasion of privacy and is presumptively reasonable.”  Walter
v. State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000) (citing Texas v. Brown, 460 U.S. 730, 738–39,
103 S. Ct. 1535, 1541 (1983)).  Two
requirements must be met to satisfy the plain view doctrine:  (1) the law enforcement officers must have a
right to be where they are, and (2) it must be immediately apparent to the
officers that the seized item constitutes evidence, meaning that the officers
must immediately have probable cause to associate the item with criminal
activity.  See id.; Horton v. California,
496 U.S. 128, 136, 110 S. Ct. 2301, 2308 (1990).  The officers must not have violated the
Fourth Amendment in arriving at the place from which they can observe the
evidence in plain view.  See Walter, 28 S.W.3d at 541; Brown, 460 U.S. at 739, 103 S. Ct. at
1542 (“[I]f, while lawfully engaged in an activity in a particular place,
police officers perceive a suspicious object, they may seize it immediately.”).

          Alexander
contends that the police illegally searched his car because it was nighttime,
the car windows were closed and tinted, and flashlights were necessary to see
inside; thus, the cocaine was not in plain view.  As we have discussed, McNichols, Williams,
and Hill all testified that they could see into Alexander’s vehicle.

In denying Alexander’s motion to
suppress, the trial court impliedly found that Officers McNichols and Williams
could see into Alexander’s vehicle.  We
defer to this implied historical fact-finding. 
See Guzman, 955
S.W.2d at 89.  Even though the
officers used flashlights and the light on Williams’ bicycle, using a
flashlight to see into the interior of Alexander’s car does not constitute a
search and therefore does not violate the Fourth Amendment.  See
Brown, 460 U.S. at 739–40, 103 S. Ct. at 1542 (“It is likewise beyond
dispute that Maples’ action in shining his flashlight to illuminate the
interior of Brown’s car trenched upon no right secured to the latter by the
Fourth Amendment. . . . ‘[The] use of a searchlight is
comparable to the use of a marine glass or a field glass.  It is not prohibited by the Constitution.’” (quoting
United States v. Lee, 274 U.S. 559,
563 (1927))).  Likewise, even though the
officers had to walk up to Alexander’s car and look in through the open window
to see the cocaine, their actions do not violate the Fourth Amendment.  Alexander parked his car in a public place
underneath the Pierce Elevated:  any
member of the public could walk up to Alexander’s car and look inside from
numerous different angles.  See id. at 740,
103 S. Ct. at 1542; Walter, 28 S.W.3d
at 544.  There is no reason why Officers
McNichols and Williams “should be precluded from observing as an officer what would
be entirely visible to [them] as private citizen[s].”  Brown, 460 U.S. at 740, 103 S. Ct. at 1542.  Because “inquisitive passersby” could view the
inside of Alexander’s car, Alexander had no legitimate expectation of privacy
in the interior of the vehicle, and thus the officers’ conduct leading to their
observation of the cocaine in Alexander’s hand does not violate the Fourth
Amendment.  Id.

          Alexander
further contends that the State failed to establish that the officers had
probable cause to associate the discovered substance with criminal activity
because the State did not elicit testimony from Officers McNichols and Williams
regarding their training and experience in identifying crack cocaine.  To determine if an officer had probable
cause, we consider the totality of the circumstances, including the training,
knowledge, and experience of the officer. 
See Wiede, 214
S.W.3d at 25.  Probable cause
exists when “the known facts and circumstances are sufficient to warrant a man
of reasonable prudence in the belief that contraband . . . will
be found.”  See id. at 24.  In Wiede,
the arresting officer testified that he had worked for DPS for seven years and
that he was “trained to recognize different types of controlled substances and
the legal standards for conducting different types of searches.”  Id. at 27.  According
to the Court of Criminal Appeals, the officer’s “testimony about his training
and his opinion concerning the contents of the plastic bag provided a basis
from which the trial judge could have reasonably inferred that [the officer]
possessed specific knowledge that drugs are commonly packaged, carried, or
transported in plastic bags.”  Id.

Although neither Officer McNichols
nor Officer Williams testified about the training they received in identifying
controlled substances, they both stated that they worked in the “special ops
division” of the Houston Police Department. 
McNichols had been employed by HPD for approximately nine years and had
been a member of the special ops division for five, while Williams had been
employed by HPD for eleven and a half years. 
Officer McNichols further explained that his duties as a member of this
division involve patrolling downtown on bicycle, including the area surrounding
the Pierce Elevated, which McNichols called a “high drug and prostitution
area.”  McNichols also stated that he had
seen crack cocaine before, although he could not definitively state that the
substance Alexander held was cocaine until he performed a field test.  Both McNichols and Williams testified that
the substance in Alexander’s hand appeared to be crack cocaine.  McNichols and Williams’ testimony regarding
their experience with HPD and the special ops division, their previous
encounters with crack cocaine, and their opinions regarding the identity of the
substance Alexander held provided a sufficient basis from which the trial court
could reasonably infer that the officers had immediate probable cause to
believe that Alexander possessed cocaine. 
We hold that because the officers observed the cocaine in plain view, they
immediately had probable cause to believe that the substance was associated
with criminal activity.  Accordingly, the
trial court did not abuse its discretion in denying Alexander’s motion to
suppress evidence.

Denial of Requested Article 38.23 Instruction

          In
his third issue, Alexander contends that the trial court erred in denying his
requested jury instruction pursuant to article 38.23 of the Texas Code of
Criminal Procedure.  According to
Alexander, because the officers could not have seen the cocaine located inside
his vehicle, the search, seizure, and arrest were all illegal, and the trial
court should have excluded the cocaine. 
Article 38.23 provides:

No evidence obtained by an officer or other person in
violation of any provisions of the Constitution or laws of the State of Texas,
or of the Constitution or laws of the United States of America, shall be
admitted in evidence against the accused on the trial of any criminal
case.  In any case where the legal evidence
raises an issue hereunder, the jury shall be instructed that if it believes, or
has a reasonable doubt, that the evidence was obtained in violation of the
provisions of this Article, then and in such event, the jury shall disregard
any such evidence so obtained.

 

Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon
2005).  The trial court must
include an article 38.23 instruction only if a factual dispute exists as to how
the particular evidence was obtained.  See Balentine v. State, 71 S.W.3d 763, 773 (Tex. Crim. App. 2002).  The defendant must meet three requirements
before he is entitled to an article 38.23 instruction:  (1) the evidence must raise an issue of fact;
(2) the evidence on that fact must be affirmatively contested; and (3) the
contested factual issue must be material to the lawfulness of the challenged
conduct in obtaining the evidence.  Madden v. State, 242
S.W.3d 504, 510 (Tex. Crim. App. 2007). 
If no disputed factual issue exists, the trial court determines the
legality of the challenged conduct as a matter of law.  Id.  If other undisputed facts are sufficient to
establish the lawfulness of the conduct, the contested factual issue is not
material and the defendant is not entitled to a jury instruction on the fact
issue.  See id. at 510–11.

          In
Madden, the Court of Criminal Appeals
specified that the defendant must request an article 38.23 instruction “on a
specific historical fact or facts.”  Id. at 511.  The Madden
court held that the defendant was not entitled to a jury instruction regarding
whether the officer had reasonable suspicion to detain the appellant, because
“[l]ooking just at appellant’s requested jury
instruction, neither the trial judge, the court of appeals, nor ourselves could
have any idea of what specific fact or facts appellant believed were in
dispute.”  Id. at 511–12.  Similarly, Alexander’s defense counsel only
made the following request:  “And we’d
ask the Court also to insert in the charge a 38.23 instruction.”  Defense counsel did not specify which
disputed historical facts the jury should determine.  Alexander did not request an Article 38.23
instruction on a specific historical fact, and thus he has not preserved any
error for appeal.

Conclusion

We hold that the State presented
legally and factually sufficient evidence that Alexander possessed a controlled
substance, cocaine.  Additionally, the
arresting officers conducted a proper plain view seizure of the cocaine and
thus the trial court did not abuse its discretion in denying Alexander’s motion
to suppress the cocaine.  Further,
because Alexander did not request an article 38.23 instruction on a specific
historical fact, Alexander failed to preserve any error in the jury charge.  We affirm the judgment of the trial court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices Jennings,
Hanks, and Bland.

Do Not Publish.  Tex. R. App. P. 47.2(b).











[1] Although Alexander also contends that the jury’s
verdict is clearly wrong and manifestly unjust because the State failed to
prove which bag of cocaine belongs to Alexander, he does not point to any
evidence in the record that undermines or contradicts McNichols’ testimony that
State’s Exhibit 2 contained the cocaine that Alexander held in his hand.